Gregory A. Gensler, Plaintiff-Respondent,
v.
Doris J. Vander Kooi, Defendant-Appellant.
No. 03-3277.
Court of Appeals of Wisconsin.
Opinion Filed: August 26, 2004.
Before Deininger, P.J., Dykman and Vergeront, JJ.
¶1 VERGERONT, J.
Doris Vander Kooi appeals the circuit court's judgment in a boundary dispute with her neighboring property owner, Gregory Gensler. Vander Kooi argues that the circuit court erred in construing the deeds describing two parcels of real estate she owns. We conclude that the court erred in construing the location of the beginning point in the description of the northern parcel as the intersection of the centerlines of Hackbarth Road and City Highway 14. The deed unambiguously provides that the beginning point is the intersection of the centerline of Hackbarth Road and a line drawn along the "Westerly line of the concrete highway, now known as City Highway 14." We remand to the circuit court for the purpose of resolving this ambiguity in the deed: does the "Westerly line of the concrete highway, now known as City Highway 14" mean the western edge of the concrete portion of the highway as it existed in 1925 or the western edge of the right-of-way as it existed in 1925? Accordingly, we reverse and remand for further proceedings consistent with this opinion.

BACKGROUND
¶2 Gensler initiated this action, contending that Vander Kooi constructed a shed on his property and otherwise occupied his property. He sought a declaration of his interest in the disputed real property under WIS. STAT. § 841.01.[1] Vander Kooi's answer alleged that she was the owner of the disputed area. She also filed a counterclaim, alleging in the alternative that she owned the disputed land by adverse possession. The following testimony was presented at trial.
¶3 Vander Kooi and Gensler both own land in Rock County that was once owned by an individual who deeded land to the predecessors of the parties. Vander Kooi obtained a warranty deed for her parcels on June 23, 1995. Gensler obtained a warranty deed for his land on January 29, 2002. The description included in Gensler's deed was a general description of land bounded by roads and limited by exceptions for parcels carved out of this area by other deeds, including the parcels owned by Vander Kooi. Thus, Gensler owns all the land not contained in the exceptions that were deeded to others.
¶4 The deed to Vander Kooi's property included a metes and bounds description of two parcels, one from a 1925 conveyance and the other from a 1930 conveyance. These parcels carve out the northern section of the land described in Gensler's deed. The deed describes Vander Kooi's northern parcel as the following:
That part of the East ½ of the Northwest ¼ of Section 15, Township 3 North, Range 12 East, described as follows, to-wit: Commencing at the point of intersection or junction of the concrete highway known as number 13, now known as City Highway 14, with the old gravel public highway running directly North and South in said section, now known as Hackbarth Road, said commencing point being about 100 rods South of the public highway running between Sections 10 and 15, now known as Highway 14, thence running South along the center of said old gravel highway, now known as Hackbarth Road, 240 feet, more or less; thence Easterly in a direct line, 130 feet, more or less, to the Westerly line of the concrete highway, now known as City Highway 14, thence Northwesterly along said concrete highway, now known as City Highway 14; 240 feet, more or less, to the place of beginning; meaning to describe a triangular parcel of land lying Southwesterly of said concrete highway, now known as City Highway 14, and between the highways described.[2]
The deed uses the northern parcel as a point of reference for determining the southern parcel. That description states:
Also that part of the East ½ of the Northwest ¼ of said Section 15, described as follows: Commencing at a point on the Westerly margin of the concrete highway known as number 13, now known as Hackbarth Road, which point is the Southeast corner of the above described parcel of land, and running thence Southerly along the Westerly margin of said concrete highway, now known as Hackbarth Road, 132 feet; thence Northwesterly in a direct line to the center of the gravel highway which runs North and South thru said Section, now known as City Highway 14 to a point 132 feet southerly from the Southwest corner of said triangular tract; thence North along the center of said gravel highway, now known as City Highway 14, 132 feet to said Southwest corner of said triangular tract; thence easterly along the Southerly boundary line of said triangular tract to place of beginning.[3]
¶5 Before the trial, the parties stipulated that the construction of the language of the deed was "a purely legal issue to be decided by the court" that would be "submitted for decision on stipulated facts." At trial, both parties agreed that no two surveyors they had spoken to interpreted the legal descriptions in the deed to arrive at identical dimensions for the parcels. Nonetheless, each side called a witness to give an interpretation of the legal descriptions: Gensler called the Rock County planning director and Vander Kooi called a surveyor. Both witnesses agreed that the beginning point was the intersection of the centerline of the two roads, but they had differing views on how the legs of the triangle should be determined. The planning director drew the first leg (west leg) from the beginning point south along the centerline of Hackbarth Road approximately 240 feet; the second leg (south leg) at what appears to be less than a ninety-degree angle from that point 130 feet to the western paved edge of City Highway 14; and the third leg (east leg) approximately 240 feet from that point back to the beginning point at the intersection of the centerlines, with the result that the east leg did not run parallel to the paved edge of City Highway 14. The surveyor drew the west leg from the beginning point south along the centerline of Hackbarth Road approximately 240 feet; the south leg at an obtuse angle from that point approximately 125 feet over to the westerly right-of-way of City Highway 14; and the east leg 240 feet along the westerly right-of-way to the center line of Hackbarth Road, with the result that the ending point was not the beginning point but approximately 60 feet south of the beginning point.
¶6 In its decision, the circuit court stated that the deed was unambiguous and therefore it could not consider extrinsic evidence to construe the legal descriptions of the parcels, although it also stated that "there was consensus" that the beginning point of the northern plot, described as the "point of intersection or junction" of Hackbarth Road and City Highway 14, was the intersection of the centerlines of the two roads. The court described the northern parcel in this way:
[It] ... is without question in the shape of an isosceles triangle, meaning it has two equal legs of 240 feet commencing at the point of beginning. One leg [the west leg] goes 240 feet straight down the centerline of Hackbarth road; the other [the east leg] goes straight down the westerly line of the concrete highway, now City Highway 14, which the court interprets to be the edge of the pavement itself, not the right of way.... The court finds that connecting [the end points of each of these legs] draws the southern boundary, which most closely meets the intent of the original conveyance.
The court then determined the southern parcel was "unmistakably ... in the shape of an isosceles trapezoid" with the northern boundary being the same line as the southern boundary of the northern parcel, one side running 132 feet down the centerline of Hackbarth Road, another running along the westerly edge of the pavement of City Highway 14, and the southern boundary running parallel to the northern boundary and connecting the southern endpoints of the two 132-foot sides. The two parcels, the court stated, thus combined to form "another, larger isosceles triangle[.]"
¶7 In addition to construing Vander Kooi's deed, the circuit court also ruled against her claim of adverse possession. Vander Kooi appeals only the circuit court's judgment regarding the interpretation of her deed.

DISCUSSION
¶8 Vander Kooi argues that the circuit court incorrectly interpreted the deed describing her parcels of land. She contends that the deed unambiguously states the beginning point used to draw the northern parcel is not the intersection of the centerlines of the two roads, but rather the intersection of the centerline of Hackbarth Road and the western edge of City Highway 14. Alternatively, she argues that even if the deed is ambiguous, the extrinsic evidence elicited at trial supports the view that the starting point is the intersection of the centerline of Hackbarth Road and the western edge of City Highway 14. If Vander Kooi is correct, the starting point is located further south along Hackbarth Road, with the result that she would own at least some of the disputed land.
¶9 Resolving this dispute requires us to construe the language of the deed. Deeds are construed the same as other written instruments; if the language of a deed is unambiguous, its construction is purely a question of law, which we review de novo. Edlin v. Soderstrom, 83 Wis. 2d 58, 69, 264 N.W.2d 275 (1978). When there is ambiguity in the deed, the meaning of the ambiguous words presents a question of fact, and we will not overturn the circuit court's findings of fact unless they are clearly erroneous. Id. at 69-70; WIS. STAT. § 805.17(2). We may look to extrinsic evidence to construe ambiguity, but where the deed is unambiguous we may not consider extrinsic evidence. See Rikkers v. Ryan, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977).
¶10 We conclude that, while the initial description of the beginning point of the northern parcel is unclear, when the entire description is read, that point plainly cannot be the intersection of the centerlines of Hackbarth Road and City Highway 14. The initial description"the point of intersection or junction" of the two roadsdoes not specify where in the area of intersection of the two roads the beginning "point" is located. However, because the west side of the triangle runs from the beginning point "South along the center" of Hackbarth Road, we know that the beginning point has to be on the centerline of Hackbarth Road. But the beginning point cannot be on the centerline of City Highway 14, because the east leg of the triangle, goes from "the Westerly line of the concrete highway, now known as City Highway 14, thence Northwesterly along said concrete highway ... to the place of beginning[.]" Thus, of the two legs that intersect at the beginning point, one plainly runs along the centerline of Hackbarth Road and the other plainly runs along the "Westerly line of ... City Highway 14." Therefore, the intersection of these two legs must be the point where the centerline of Hackbarth Road and the "Westerly line of ... City Highway 14" meet.
¶11 The circuit court's error in determining the beginning point results in a description of the northern parcel that is internally inconsistent. The court's statement that the beginning point is at the intersection of the centerlines of Hackbarth Road and City Highway 14, and its statement that one leg (the eastern leg) goes "straight down the westerly line of the concrete highway, now City Highway 14," cannot both be true: the east leg must connect with the west leg at the beginning point, which is impossible if the beginning point is at the centerline of City Highway 14 instead of its "Westerly line."[4]
¶12 Gensler argues that the circuit court's determination of the location of the beginning point was correct, noting that witnesses called by both parties agreed it was the intersection of the centerlines of the two roads and the court relied on this consensus. However, when read in its entirety, the deed plainly places the beginning point at the intersection of the centerline of Hackbarth Road and a line drawn from the "Westerly line of the concrete highway, now known as City Highway 14 ... along said concrete highway." We therefore may not consider the witnesses' testimony to determine a beginning point that is inconsistent with that plain language.
¶13 Gensler also cites to Rikkers, 76 Wis. 2d at 188, which states that "conveyance of property abutting on a street or highway transfers the legal title to the land to the center of the adjacent street or highway, in the absence of a clear intent to the contrary." However, this general standard is not applicable here because the plain language of the deed expresses a "clear intent" to the contrary.
¶14 Because of our conclusion that the deed unambiguously describes the beginning point for the northern parcel as the intersection of the centerline of Hackbarth Road and a line drawn from the "Westerly line of the concrete highway, now known as City Highway 14 ... along said concrete highway," it is necessary to determine what this phrase means. We conclude that it is ambiguous. One reasonable reading is that the "westerly line" refers to the western edge of the concrete as it existed in 1925. However, it is also reasonable to read "concrete" as describing the highway, distinguishing it from the "gravel" Hackbarth Road, and to read the "Westerly line" as referring to the western edge of the right-of-way as it existed in 1925, a line that would presumably not be as likely to change as would a line based on the width of the paved surface of the highway.
¶15 There was testimony to support both constructions of this phrase, with the planning director construing it to mean the western edge of the concrete and the surveyor construing it to mean the western edge of the right-of-way.[5] The court found this meant "the edge of the pavement itself, not the right of way." It is not clear that the court was taking into account the undisputed testimony of the planning director that City Highway 14 currently had two twelve-foot-wide lanes, but that in the 1920's the lanes would probably have been ten-feet wide. It is, to state the obvious, not reasonable to construe a deed drafted in 1925 to refer to the edge of pavementor the edge of the right-of-wayas they exist today rather than when the deed was drafted. We recognize that this difference may not have seemed significant to the court because, in the court's view, it did not affect the beginning point. We are also persuaded that, because of the way the parties and the court defined the beginning point, they did not fully appreciate the significance of the question whether the "Westerly line" was the edge of the concrete or the edge of the right-of-way, as they existed in 1925.
¶16 Because this court cannot resolve factual disputes, we conclude the proper course is to remand to the circuit court for the purpose of resolving this question: does the "Westerly line of the concrete highway, now known as City Highway 14" mean the western edge of the concrete portion of the highway as it existed in 1925 or the western edge of the right-of-way as it existed in 1925?

CONCLUSION
¶17 We reverse the circuit court's interpretation of the deed regarding the location of the beginning point of the northern parcel. We conclude that the deed unambiguously provides that the beginning point is the intersection of the centerline of Hackbarth Road and a line drawn along the "Westerly line of the concrete highway, now known as City Highway 14." We remand to the circuit court for the purpose of resolving this ambiguity in the deed: does the "Westerly line of the concrete highway, now known as City Highway 14" mean the western edge of the concrete portion of the highway as it existed in 1925 or the western edge of the right-of-way as it existed in 1925? The court may conduct such further proceedings to resolve this ambiguity as it considers appropriate.
By the Court.  Judgment reversed and cause remanded with directions.
¶18 DYKMAN, J. (concurring).
The trial in this case was nearly a year and a half ago. By now, the parties, their attorneys, and the trial court probably do not well recall the facts of this case, which the trial court described as "one complicated real estate case." The majority and I have concluded that the 1925 deed from William and Mathilda Hackbarth to W.A. Knipp and L.H. Inman was ambiguous because the third call could be the edge of the concrete of a highway, or the edge of the right-of-way of the highway. In a vacuum, the edge of the VanderKoii property does not affect Gensler because that is not the border of his property. But the significance of this border is of interest to him because the further South the point of beginning is located, the further South VanderKooi's property extends on its West boundary.
¶19 Pictures are often worth pages of text. So, to make clearer the significance of the location of the beginning point, I have altered Exhibit 28 to present two possible outcomes. Alternative "A" shows the Eastern boundary of VanderKooi's property to be the edge of the right of way of Highway 14. Alternative "B" shows the Eastern boundary of VanderKooi's property to be "along said concrete highway" assuming that this description was in 1925 along a line that is ten feet Westerly of the centerline of the present Highway 14. The exact location of that concrete highway is not of record so far, and something that Gensler would have to show on remand if he wishes the trial court to adopt that definition of the 1925 deed. 
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The language of the June 28, 1995 deed recording the transfer of land to Vander Kooi is essentially identical to the 1925 and 1930 deeds originally describing the parcels, except that the 1995 deed includes explanations that the road known as "number 13" in the earlier deeds is now known as City Highway 14, and the "old gravel public highway running directly north and south" is now known as Hackbarth Road; there are other minor changes not materially affecting the description of the parcels.
[3] The legal description of the southern parcel confuses Hackbarth Road and City Highway 14. However, based on the trial testimony, there is no dispute that the concrete highway is City Highway 14 and the gravel road is Hackbarth Road. In addition, based on the parties' arguments, they implicitly agree that the reference to "northwesterly" is in error, and should read "southwesterly."
[4] In the event we have misunderstood the court's ruling and it was adopting the approach of the planning director, we would also conclude that the court erred in its construction of the deed. We conclude that a line that runs "along" City Highway 14 from "the Westerly line of the concrete highway" plainly cannot run from the westerly line to the centerline of the highway.
[5] The surveyor testified that he had never heard of a description going to the edge of a concrete highway.